# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Grandom's Estate.

Testator desired his executors to pay a certain sum of money to a benevolent society, if any existed, to alleviate the suffering of the most prudent poor but not the intemperate, in procuring food, clothing and other necessaries which such persons want in winter. A society whose objects were the promotion of the temperance cause by the diffusion of temperance knowledge, the circulation of the pledge of total abstinence from all intoxicating liquors, and the dispensation of the charity of the association to the suffering poor, of Philadelphia and its districts, of good moral character, who do not use intoxicating liquors as a beverage, *held* not entitled to the legacy.

It is not important that a list of charities referred to by the testator in his will was no part of the will, and that it was not admitted to probate as testamentary. A Chancellor would regard it as controlling the discretion of the executors in the dispensation of the charities.

APPEAL by the Philadelphia Temperance and Benevolent Association from the decree of the Orphan's court of the city and county of Philadelphia in the matter of Hartt Grandom's estate.

Hartt Grandom died in 1840, having by will dated the 21st July 1833, and proved the 28th November 1840, devised all his estate to John Hart, John S. Hart and Samuel R. Simmons, to have the whole at their disposal. The will contained the following clause: "In order that my executors may have information

relating to my estate, and my views as to a disposition of it by them, a list, &c. will accompany this; (this list, however, is for their use, and no part of this will)." He then appointed them executors. The list, which was filed in the register's office with the will, was as follows:

*Philadelphia, July 16th* 1834.

ESTEEMED FRIENDS:

1. In my will or summary devise to you, I have referred to a list relating to my views as to the disposition of my property, which I have bequeathed to you at my decease, that a judicious and beneficial distribution be made. I request you to pay all claims for collateral inheritance, or other tax that may be due, before any other payments; and that the entire sum be paid to those I have bequeathed; for I think it will be most agreeable to those who receive, and less trouble to you: then as follows, viz.

2. Philadelphia Society for the Establishment and Support of Charity Schools $3000. Pennsylvania Colonization Society $2000.

3. Young Men's Colonization Society of Pennsylvania $1000.

4. House of Refuge $3000.

5. Philadelphia Dispensary $1000.

6. Northern Dispensary $1000.

7. Southern Dispensary $1000.

8. Pennsylvania Society for discouraging the use of Ardent Spirits, $3000.

9. Provident Society for employing the Poor $3000.

10. Infant School of Philadelphia $2000.

11. To such infant schools which may be established in the city or county of Philadelphia at my decease, I appropriate $2000, to be judiciously apportioned among them by such prudent persons as are acquainted with those institutions.

12. To each of the following named persons, if living after my decease, (but not to their heirs), viz., Abigail Barker, of Burlington, $4000; (I would suggest that this sum be invested in a life annuity.) John G. Simmons $1000 dollars. Hannah Churchman $500. Margaret Churchman, $500. Deborah Newbold, $250. Mary Borton, (formerly housekeeper), of Chester county, near West Chester, $500. Susan Plankinhorn, daughter of John Plankinhorn, deceased, $500, for to be invested in a life annuity.

13. To each of the following named persons, or their heirs, or legal representatives, viz., Hartt G. Coates, of Chester county, $2000: I hope he will conduct with propriety, and make a proper use of this bequest. Thomas H. Powers $2000: I hope Thomas will not enter largely into business, so as to risk and lose what he has or may receive. Sarah Churchman, widow of Mordecai Churchman, $500. Ruth Litle, daughter of John James, $1000. John P. Ware, of New York, $500.

14. To the children of Richard Ware,—except John P. Ware,— who are of suitable age, I request you to pay each $100, and also

[Grandom's Estate.]

a like sum to the others, as they arrive at suitable and more mature age.

15. Mary Pearson, No. 16 north 6th street, I wish you to pay, at different times, as may be suitable for her and sister Martha, assistance, what you think will be proper, in addition to the rent which they receive from the front room, which they let as a store. This house and lot was intended for Mary Pearson, by brother, who put her in possession of said property, but omitted to make her the proper conveyance; and since his decease has been claimed by the Apprentices' Library Company, who I conceive had no just claim to said property. Cousin John Hart can explain the subject, and I wish you to be liberal, as they are both weakly, and Mary far advanced in life.

16. Elizabeth Hooten, my housekeeper, if she continues in her present situation until my decease, I wish you to pay her $2000. If cousin Catherine Sheppard, Lydia Hart, and Rebecca Simmons survive me, I wish you to give each of the survivors $500, to be disposed of as they think proper, for charitable, benevolent and other useful purposes.

17. I wish you to convey either to an incorporate or to a benevolent society, [but if no such institution exists, I would like you and some of our friends to select some proper persons, and make a transfer to them, in trust, of all the ground-rents I may own at my decease, and other property that may be the most suitable, so as to make the clear and annual income about $1500, which is to be an annual, permanent fund, for] to alleviate the most prudent of the poor, (but not the intemperate), in procuring fuel, clothing and other necessaries, which such persons want in winter. The income is only to be expended, but the principal is not to be lessened, but to remain a regular annual income for said purpose.

18. I have long desired that a society was established in this city, and the members composed of discreet persons, and who feel interested in the moral and religious welfare of those young men who arrive at manhood, and want assistance for to commence their various vocations which they have learned, their parents are not able, or unwilling, for to aid their children, and they sustain a loss.

19. For to commence such useful and beneficent an institution, I feel as though it was my duty to make a commencement, and for that purpose I direct, that if an incorporated or other society be formed at my decease, or within one year after, and such as are approved by you, and other proper persons whom I wish you to consult, and which embrace my ideas or views of this subject, that a conveyance be made, either of real or personal property, worth about $20,000. I hope this sum will be sufficient for some suitable incorporated society, or a society formed for the purpose, to take charge of this bequest; it will be of use to many young men of future generations; and I am in hopes it will induce others to remember such an institution. I feel the importance of this

bequest, which I believe arises from pure motives, and I hope it will be patronized by religious and proper persons, for I suggest no plan but my own idea or views of the subject, which I have to leave to the judgment of the society, whose collective judgment will be better than if trammeled by my directions. I am in hopes that much good may be done by proper persons, in aiding this useful part of the community, though the sum given may be small; but if the friends increase they will be more generous. I feel much interest for the moral and religious and temperate advancement of the young men of our city who are commencing business.

20. To each of the children who are living at my decease, of Catherine Sheppard, John Hart and Stephen Simmons, and to Elizabeth Gummere, (if she survive me), I wish you to give $100 to each of them, as a mark of respect.

21. My old friends and associates, who were in the employ of the Bank of Pennsylvania before my resignation, seem now near to me, and I think some assistance should be given to those who may be in need at my decease. My particular friend Joseph Trotter, will, I presume, inform you of such, and aid my views relating to this subject; and I suggest, if it should be thought necessary, that a sum be given to him, or some other suitable person,—in case of his death,—for said purpose, and to be distributed as he may judge best, without mentioning their names, or hurt their feelings.

22. I give to each of my executors (in addition to their commissions) $1000; and to cousin Stephen Simmons $1000; and I wish you to consult him generally on important subjects; though he has lost his sight, yet his judgment is estimated by me, and I sympathize with him in this affliction.

23. I should like you to open an account, as my executors, in one of the banks, and make regular deposits of what may be received, and all payments to be made by checks on the bank. This is the most common way of settling estates, and generally gives the most satisfaction.

24. The residue, after a reasonable time, I suggest that it be divided among the many useful and benevolent societies or associations which have not been named by me; and for that purpose, if you were furnished with a list of such institutions as was suitable, in order to make a proper selection, it would be done to more satisfaction. The sum for your distribution will be large, and I should like as much good be done with it as possible, and in such a way as to give the most satisfaction; on conferring with some of the managers of those public institutions, they will aid you in the matter, and the opinion of some of the most prudent would be desirable.

25. I hope, my dear friends, you may experience a degree of the feeling which I hope is felt by me, and which is no ordinary feeling, but wisheth the happiness of all the human family; it has an

[Grandom's Estate.]

attendancy to calm the mind; I hope you will experience the same (may I not say divine) feeling, and a satisfaction in your minds, to which no sorrow will be added.

26. I have used freedom of expression without fear; for the subject is serious to one situated as I am; but I am in hopes,—as my health is good,—you may not see this communication, but it seems proper to be prepared; that in that awful time when our dissolution may take place, we may not be troubled with temporal concerns. I am, with respect and esteem, your real friend,

HARTT GRANDOM.

John Hart, John S. Hart,
and Samuel R. Simmons.

On the 4th February 1842, Samuel R. Simmons, surviving executor, filed his account, at the foot of which he appended the following statement and declaration, as sole and surviving legatee and devisee under the will:

" This accountant found, with the will of the testator, a letter of instructions dated July 16th 1834, expressing the wishes of the deceased as to the disposal of the property. The executor felt it to be his duty to file that letter in the Register's office with the will, and desires that the property left by the testator may be distributed as nearly in conformity therewith as circumstances and the law will admit, and submits the same to the decision of the Orphans' Court for the city and county of Philadelphia, as the proper tribunal having jurisdiction of the subject. So far as the said letter of instructions designates the persons to take and specifies amounts to be received by the objects of the testator's bounty, there is no discretion to be exercised by the surviving legatee and devisee in aid of the jurisdiction of the court. So far as the objects and amounts are indeterminate and referred to his discretion, he respectfully submits the following suggestions to the court as containing his recommendations, and if necessary to be so considered, his decision in relation to them, subject to the confirmation and decision of the court, viz: 1st. For Mary Pearson and sister Martha, that $9000 should be invested to yield them an income during their joint lives and the life of the survivor of them, and then the principal to go into the residue.

2d. For the ' Grandom Institution,' incorporated by the State of Pennsylvania, by Act passed 23d April 1841, which is approved by me and such persons as I have thought proper to consult.

1st. For the object therein first expressed:

All the ground rents, deducting taxes, leaving an income of about $450 at a valuation of . . . . . . . . . $7,500.00
State Loan invested by me with this object in view . 8,000.00
And other property or money to the value of . . . . 9,500.00
                                                        ———————
                                                        $25,000.00

2d. For the object therein secondly expressed:

| | |
|---|---|
| Two houses corner of 7th and Sansom streets, worth | $11,500.00 |
| Cherry street house . . . . . . . . . . . . . | 4,500.00 |
| Union street property . . . . . . . . . . . . | 3,000.00 |
| Other property or money . . . . . . . . . . . | 1,000.00 |
| | $20,000.00 |

To Joseph Trotter, for testator's old friends and associates in the Bank of Pennsylvania, $2000.

And as from the great change that has taken place in the value of stocks, the residue of the estate, if any, will fall greatly short of the expectations of the testator, the said legatee and devisee, at this time, forbears to designate the " Benevolent Societies and Associations" to take the same until such residue shall be ascertained and the period arrive for its distribution; and to guard against any failure of the trust from his present omission, it is his intention to declare the object by writing in the nature of a will, which he trusts may effectually carry out the benevolent purposes of the testator, in case the same should not be completed during the lifetime of the surviving legatee."

The Philadelphia Temperance and Benevolent Association claimed to be legatees, entitled, under the 17th item of the list, to the legacy of $25,000; but the court below rejected their claim. This association existed at the testator's death. Its objects are declared in the 2d article of its constitution, as follows:

" The object of this association shall be the promotion of the temperance cause, by the diffusion of temperance knowledge, the circulation of the pledge of total abstinence from all intoxicating liquors, and the dispensation of the charity of the association to the suffering poor of Philadelphia and its districts, of good moral character, who do not use intoxicating liquors as a beverage."

To show, however, its character, the following documents were produced:

### Deposition of W. W. Perrine.

I have known the society from the fact of being one of its stewards. I am not a member, and have no interest in the result of their claim under the will of H. Grandom. The society was formed in December 1839. The main and chief object of the society is the relief of the temperate poor. This has always been its object. I am not aware of the society distributing temperance pledges, except so far as such distribution is auxiliary to the fundamental object of those who formed the society. Our constitution confines us in the distribution of our charities to the temperate poor; and in order to make it perfectly satisfactory that the character of the applicant will bring him within the requirements of the constitution, we sometimes require a pledge, and in this way a pledge may have been circulated; but it is by no means

[Grandom's Estate.]

essential that the objects of our charity should be a member of this or any other society, although we never give to any but to the strictly temperate.   While a member of the society I was steward of district No. 5.   In 1840 the whole amount of money I distributed was $59.   The number of families supplied with food, fuel and other necessaries, were thirteen.   The number of individuals in these families were 48.   In the winter of 1841 we made a female auxiliary society in my district.   I think, through the aid of this society, we have done more good than in 1840.   Our society bears a good comparison, as to its objects and operations, to the Union Benevolent Association, except that our charity is restricted to the temperate poor.   We have physicians in each district as well as stewards, whose duty it is to attend the sick.   The certificate, such as the one annexed, of an individual being a member of some temperance society, merely supersedes the necessity of our inquiring into the character of the individual as to his use of intoxicating drinks.   It is not essential.   I have been steward since the formation of the association.

Cross-examined.—I resigned in May or June last, in order to be examined in relation to this matter.   I have no expectation of joining the society.   I have done my share of labour.

*Certificate referred to in the above deposition.*

*Philadelphia, March 2,* 1840.

This is to certify that Massey Cooper resides in district No. 5, and is a member of the Temperance Beneficial Association, Western Branch No. 2, in good and regular standing, destitute of the comforts of life and in a suffering condition, and by reason of health has no claims on the funds of said association.

ELIZABETH TOOL, *Steward.*
B. B. LOXLEY, *President.*
WM. BARGER, *Secretary.*

To Wm. W. Perrine, Steward of the Philadelphia Temperance and Benevolent Association, district No. 5.

*Constitution of The Female Auxiliary Society, referred to in and annexed to the above deposition.*

Art. 1. This society shall be called the Female Benevolent Society of the North Western portion of the city of Philadelphia, auxiliary to the Philadelphia Temperance and Benevolent Association.   (Bounded on the East by Delaware Seventh street, and on the West by the Schuylkill, and on the South by Chesnut street, and on the North by Vine street.)

Art. 2. The objects of this society shall be to make clothing for the relief of the worthy and suffering poor, who do not use intoxicating drinks as a beverage.

Art. 3. Sec. 1. The officers of this society shall be a first and second directress, a recording and corresponding secretary and

treasurer.  Each member of the society shall be a member of the board of managers.

Sec. 2.  It shall be the duty of the first directress to preside at all the meetings of the society; to keep order, and to have a general supervision of the doings of each meeting.  In case of her absence, the second directress to preside; or if both be absent, a directress *pro tempore* to be appointed.

Sec. 3.  It shall be the duty of the recording secretary to attend all the meetings of the society, keep a full and fair record of all of its transactions, to register the names, to call the roll and enter the names of those absent.

Sec. 4.  It shall be the duty of the corresponding secretary, when ordered by the society, to make application to the Philadelphia Temperance and Benevolent Association for aid, and attend to any other correspondence the society may require.

Sec. 5.  It shall be the duty of the treasurer to attend each of the meetings of the society, to receive and to hold all the moneys and goods, the property of the society, and to render an accurate report of the same whenever called upon so to do by the society, provided she has a week previous notice to that effect; and to answer or pay all written orders for money or goods drawn on her by the society, signed by the first directress and countersigned by the secretary; and monthly to render a full account in writing of the state of the treasury, to the steward of the Philadelphia Temperance and Benevolent Association, acting in this district.

Sec. 6.  The officers of this society shall be elected annually, on the first Thursday in November of each and every year.

Sec. 7.  The society, for a portion of each year, shall hold weekly meetings in such days and place as may be set forth in its by-laws.

Sec. 8.  The persons who shall adopt this constitution by subscribing their names to the same, together with such others as they may from time to time elect by an unanimous vote, shall constitute the members of this society.  Each member to pay into the treasury the sum of $   in advance, annually.

Sec. 9.  The donations in clothing, to be made by the society, shall be entered on two separate pieces of paper, stating the number of garments, the name and residence of the recipient, and signed by the first directress and the donor or donors, and sent to the steward of the Philadelphia Temperance and Benevolent Association of this district for his approval; the paper marked approved by the steward, to be given to the treasurer of this society, and the duplicate paper left with the steward above named.

Sec. 10.  No moneys to be drawn from the treasury for any purpose except to buy materials to make clothing for the purpose set forth in Article 2.

Sec. 11.  All moneys disposed of to purchase materials to carry out the objects of this society, shall be by a vote of two-thirds of

[Grandom's Estate.]

the members present at a regular meeting, and shall be drawn from the treasury by an order signed by the first directress and countersigned by the secretary. A bill of the goods purchased shall be placed in the hands of the treasurer.

Sec. 12. The society needing any of the goods in the hands of the treasurer, to keep them employed in making clothing, may obtain such articles as are indispensable to that end, by an order signed by the presiding directress and countersigned by the secretary.

Sec. 13. The officers of this society may, by the concurrence of any three of its members, call a special meeting of the society at any time and place they may see proper.

Sec. 14. This constitution cannot be altered at any time unless such alteration meets the approbation of the Philadelphia Temperance and Benevolent Association.

Sec. 15. It shall be the duty of each member of the society to encourage every applicant for aid to join some one of the Temperance Beneficial Associations.

### Deposition of J. B. Stryker.

I am not a member of the Philadelphia Temperance and Benevolent Association. I ceased to be so about May or June last, by resignation. I do not intend joining the society again as I know of. I have known the Philadelphia Temperance and Benevolent Association since its formation. It was formed on the 9th of December 1839. I have been acquainted with the operations and movements of the society from that time to the present. The paper annexed to this deposition, marked (A), contains an account of the mode of operation by the society in the distribution of charity. We organized under our constitution and divided into districts; the districts extend over such portions of the city and county as is designated by the plan attached to the printed constitution. Each district has a steward and physician, who have been performing their duties since the formation of the society. The persons to whom we distribute our charity are persons who abstain from the use of intoxicating drinks. It is not necessary that they should be members of any temperance society in order to entitle persons to the charity of the society; but evidence must be given to the officers of the society that the applicants are strictly temperate before they can entitle themselves to benefit. The fact of a person belonging to some temperance or temperance beneficial association, (of which a certificate must be produced, the form of which is hereto annexed), is *prima facie* evidence of their temperate character, and of his or her abstinence from intoxicating drinks. A certificate of such membership precludes the necessity of further inquiry. We have heretofore given more to persons not members of our society, than we have to those who are. The advancement of the temperance is not the main and

direct object of this association. Its principal object is the distribution of charity to the temperate poor. Temperance is the object of the society only so far as it is auxiliary to or the consequence of the principal object of the society. The letter annexed, marked (C), is the letter addressed to the different societies in the city and districts, at the day of the date thereof. When the certificate is produced to the steward of our society, and if it is satisfactory, he immediately draws an order on the treasurer for the amount; if not, he visits the applicant in person. The society was formed principally by individuals who had, previous to its formation, been members of and zealous in the cause of temperance societies, and persons who have joined the association since its formation have been principally members of some temperance society. We have received the patronage of and been assisted by individuals who are members of no temperance society, and who have never joined the Philadelphia Temperance and Benevolent Association.

Cross-examined.—I resigned, I think, in May or June last, before the matter was before the auditor. The object of my resignation was to leave the society to enable me to testify in matters relative to the society. I was treasurer in the society, and active in getting it up. I have no intention at the present moment to rejoin that society. I don't know that I shall ever join it again. All the members take the pledge of temperance.

*Paper referred to in the deposition of Stryker, marked* (A).

The Philadelphia Temperance and Benevolent Association was formed in the year 1839.

The associators having for their object the relief of the worthy suffering poor, and to persuade the drunkard to forsake his course of ruin and misery, felt that the cause they were about to espouse was the cause of the whole human family; they therefore invited people of every denomination who were willing to walk under the temperance banner, to become members of this association. The society, in the election of its officers and board of managers, have always endeavoured to select them from the various denominations of people, only having care to elect such as they thought best qualified to advance the interest of the society. We now cordially invite all who are willing to unite with us in our enterprise, to become members of the association. Any person may become a life member by paying five dollars into the treasury, and signing the constitution. The society does not require annual contributions from its members, but the members, like every one else, have the privilege of giving at any time as much as they see proper. The collectors for the society will attend its public meetings to receive members to the association, and donations from any persons that see proper to give. If any persons should be present at those meetings wishing to become members, and not having the money

[Grandom's Estate.]

with them, they can subscribe, and the money will be called for as they may direct; assuring all the donors that every care shall be taken to have their alms disposed of in a way calculated to diminish crime and pauperism, and to feed and clothe the worthy temperance poor. The treasury is exhausted; your aid is especially needed to enable us to prosecute the objects of the association. Your money shall not be used to pay salaries. We have none to pay; our officers render their services gratuitously. The associators having witnessed for years previous to the formation of their society, a waste of much of the property so generously bestowed by a benevolent community to feed the hungry and to clothe the naked, and not only the waste of much of your noble charity, but the sad effects it produces on many of its recipients, by furnishing them with the means of gratifying their vicious propensities, thought that some course might be pursued to relieve the wants of the poor and needy, that would not prove to them a temptation to do evil. Alms, injudiciously bestowed, hardly deserve the name of charity. Knowing that the worthy suffering poor have claims on your sympathies, and should be sustained in a community like this, so eminent for its philanthropy, without being compelled to seek shelter from the ruthless storm and the more powerful demands of nature for food, in the almshouse, there to winter indiscriminately with about fifteen hundred mortal beings, who are the degraded victims of intemperance, clothed in all their vicious habits, and marked by an all-wise Providence, that they may be read and known of all men. Under these views, the society have sought out a plan to relieve the worthy sober poor, and to stimulate the inebriate to forsake his cups, that he also may have a claim to the bounty it bestows, if he then should require it.

The society, for the purpose of accomplishing these objects, have divided the city* and its suburbs into nine districts, to each of which they have appointed a steward and a physician, as follows: North-eastern district, No. 1, Thomas Wattson, steward; Dr L. P. Gebhard, physician. North-western district, No. 2, Thomas Robinson, steward; Dr Isaac Musselman, physician. South-western district, No. 3, Martin Thayer, steward; Dr S. Saltmarsh, physician. South-eastern district, No. 4, Samuel Ashmead, steward; Dr Rush Van Dyke, physician. Penn Township district, No. 5, Dr William W. Perrine, steward; Dr William W. Perrine, physician. Northern Liberties district, No. 6, Benjamin Naglee, steward; Dr John K. Knorr, physician. Kensington district, No. 7, John T. Smith, steward; Dr James S. Rich, physician. Southwark district, No. 8, Dr D. Francis Condie, steward; Dr D. Francis Condie, physician. Passyunk and Moyamensing district, No. 9, Charles Clarkson, steward; Dr William F. Duffie, physician.

---

* The city is divided into four parts; Chesnut street and Seventh street being the dividing streets.

[Grandom's Estate.]

The objects of the charity of the society are the suffering poor of Philadelphia and its districts, of good moral character, who do not use intoxicating drinks as a beverage. The duty of each steward is, to visit the suffering poor designed to be the objects of the charity of the association, and decide their claim to its benevolence, and draw on the treasurer for the respective sums for the purpose. The duty of the physician is, to visit the sick recommended to his notice by the steward. To facilitate our operations, and to protect us from the imposition commonly practised on benevolent associations, we have a printed certificate in blank, to be used by any of the temperance beneficial associations in behalf of any of their members who may be destitute and not able to draw on the funds of their associations. The following is a copy of the certificate, viz:

*Philadelphia,*          18 .

This is to certify that          resides in district No.     , and is a member of the Temperance Beneficial Association          , in good and regular standing, destitute of the comforts of life, and in a suffering condition, and by reason of health has no claims on the funds of said association.

| This certificate, signed by those officers of the respective societies, and handed to the steward of this, will receive prompt attention. | , Steward.<br>, Pres't.<br>, Sec'y. |

This society earnestly recommends all who can, (needing charity,) to connect themselves without delay to some one of those Temperance Beneficial Associations, that they may be under the watch and care of those valuable institutions, and thereby guarantee to themselves, under the certificate of those societies, the aid of this society in case of their necessity. Nearly two-thirds of the alms this society has yet bestowed have been to persons presenting those certificates. The society finds in the prosecution of its labours that the article of clothing is much needed to relieve the wants of the suffering poor. It has therefore concluded to call on the ladies (in each of the nine districts occupied by its stewards) to form benevolent societies, auxiliary to the Philadelphia Temperance and Benevolent Association. One of those societies was formed last week for the north-western portion of Philadelphia.*

*Letter referred to by Stryker as marked* (C).

*Philadelphia, January* 31, 1840.

Dear Sir:—In accordance with a resolution passed at a meeting of the Board of Managers of the Philadelphia Temperance and Benevolent Association, I am directed to notify you of the

---

* Its constitution is annexed to the deposition of Perrine, *ante,* 543.

[Grandom's Estate.]

following resolutions of the Board, and also enclose you a copy of the constitution of the association.

Resolved, That a steward be appointed to take charge of each district, under the direction of the tenth article of the constitution.

Resolved, further, That it be the duty of each steward duly to consider the claim to the charity of the association of any person residing in his district, presenting a certificate signed by the out-door steward, president and secretary of either of the Temperance Beneficial Associations, setting forth that
resides in district No.    , and is a member of    Association, in good and regular standing, though destitute of the comforts of life, and in a suffering condition, and without claims, by means of health, on the said association.

Resolved, That this Board respectfully recommend to each of the temperance associations of the city and its suburbs, to organize themselves to visit the destitute and suffering members of their respective associations, and make application for their relief to the stewards of the Philadelphia Temperance and Benevolent Association, by certificate, as is specified in the foregoing resolutions.

Should it be the desire of your association to co-operate with the Philadelphia Temperance and Benevolent Association, in accordance with the above resolution, you may obtain of the society a printed form of the certificate by which to make application, a copy of which is herein enclosed.

Respectfully yours, &c.

WM. D. SNYDER,

Sec'y. of The Phila. Temp. and Benev. Asso.

*Constitution adopted in* 1840.

### PREAMBLE.

The undersigned, under a conviction that from the use of intoxicating liquors as a beverage emanates a large portion of the physical and moral privations which inflict upon the human family the degradations of crime and poverty and the sufferings of disease; that through the intemperance into which individuals gradually yet certainly are led by the moderate use of alcoholic drinks, whole families, who depended upon these individuals for protection and support, are frequently plunged into want, the innocent thus suffering equally with the guilty; and with the design of furnishing aid to those poor who have become so from the visitations of God's providence, and not through the vices of idleness and intemperance, and encouragement to all to become virtuous and sober; and in the firm belief that in the temperance enterprise the best interests of the human family are contemplated, and the most enlarged and comprehensive charity intended, have formed ourselves into an association under the title of the " Phila-

delphia Temperance and Benevolent Association," under the guidance and for the purposes contained in the subjoined constitution and by-laws, viz:

Art. 1. This association shall be called " The Philadelphia Temperance and Benevolent Association."

Art. 10. The stewards shall consist of nine persons, elected from and by the Board of Managers, whose duty it shall be to visit the suffering poor designed to be the objects of the charity of the association, decide their claims to its benevolence, and draw on the treasurer for the respective sums for this purpose (always on condition that such sums are in the treasury), for which they shall give receipts to the treasurer, and at every monthly meeting of the Board shall render an account of the amount and manner of their expenditures.

Art. 12. The objects of the charity of this association shall be the suffering poor of Philadelphia and its districts, of good moral character, who do not use intoxicating liquors as a beverage.

Art. 13. Any person of good moral character may become a member of this association, upon signing the pledge as adopted by it. Persons thus introduced into membership will enjoy the charity of the association, if their condition should require it, but they shall not have the privilege of voting in the association. Any person by subscribing his name to this constitution, and paying into the treasury the sum of five dollars, shall be entitled to all the privileges of membership.

Art. 14. There shall be two or more physicians appointed by the Board of Managers, whose duty it shall be to visit such sick as may be recommended to their medical care by the stewards, and to report the same at each monthly meeting of the Board.

Art. 17. Believing that intoxicating liquors of any description, when used by persons in health as a beverage, are injurious, and that the chief part of the crime and suffering of the human family arises from the use of intoxicating drinks, and that total abstinence is safety to the temperate and certain reformation to the intemperate: Therefore, we, the undersigned, do agree not to use intoxicating liquors, nor traffic in them as a beverage, and as such, in all suitable ways, to discountenance the use of them in the community.

The case was argued by

*Vandyke* and *D. P. Brown*, for the appellant; and by
*Price* and *Meredith*, contra.

The opinion of the court was delivered by

Gibson, C. J.—The office of these trustees involved the exercise strictly of a mixture of both trust and power, of which the outline was not merely sketched by the testator but partly filled up. It is unimportant that the list, as he called it, by which this

[Grandom's Estate.]

had been done, was no part of his will, but a collection of hints to assist the trustees in the exercise of their discretion, without controlling it: and that it was not admitted to probate as testamentary. A chancellor would not the less regard it in his paramount supervision of the exercise of such a discretion, to guard it from abuse. There is no discretion so absolute as to bid defiance to the inspection of the tribunals. But to induce a chancellor to control the exercise of a power like the present, would require proof of an application of the charity to purposes inconsistent with the testator's design; and what proof of it have we here? He desired the trustees to give the money in contest to a benevolent society, if any existed, " to alleviate (the sufferings of) the most prudent of the poor, but not the intemperate, in procuring *fuel, clothing,* and other necessaries which such persons want *in winter.*" The objects set forth in the charter of the society which claims the stewardship of this charity, are " the promotion of the temperance cause by the diffusion of temperance knowledge, the circulation of the pledge of total abstinence from all intoxicating liquors, and the dispensation of the charity of the association to the suffering poor of Philadelphia and its districts, of good moral character, who do not use intoxicating liquors as a beverage." These are evidently more than what the testator had in view, which was only to provide for those who suffer in winter from hunger and cold; for the dispensation of charity by the society is not only general, but subordinate to its purpose of winning the poor from drunkenness to sobriety. Depositions were indeed read to show that its principal object, at the death of the testator, was elemosynary, and that the inculcation of temperance was auxiliary to it. Still it was an association of a mixed character, whose functions were not restricted to the specific objects of the testator; and the question is not how it would have administered his bounty as it was constructed then, but how it would administer it as it is constructed now. The witnesses, however, are not borne out by the paper referred to by one of them as containing the fundamental objects of the association before it was incorporated; for it sets out with an invitation to " people of every denomination, who are willing to walk under the temperance flag, to join the association." Now to deprive the trustees of a discretionary power given to them without bound or limit, would require the society to show that it answers the testator's description in every point and particular. But it does not. Its objects are double and its alms are general. Who can say that it would not apply the testator's bounty to its own objects in preference to the object of the testator himself? For the cause of temperance and the employment of the poor, he had provided in another part of his instructions; and to apply this money to the purposes of the society, would make him do more for those objects than he intended. The Philadelphia Temperance and Benevolent Associ-

[Grandom's Estate.]

ation, therefore, is not entitled, and the pretensions of no other claimant are before us. But the trustees had undoubted power to vest the title in a corporation created for the purpose, and the Grandom Institute, therefore, is the legitimate trustee.

Decree of the Orphans' Court affirmed.