## McNeil's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Harry Gerber*, for exceptant.

*Walter Lee Sheppard* and *Sheldon F. Potter*, contra.

KLEIN, J., June 17, 1940.—Decedent by his will created a trust, the income from which was to be distributed "among such organized societies as may be found in Germantown, Philadelphia, for the benefit and the alleviation of the poor in Germantown." He provided, further, that "none of the said monies shall be paid to any religious or sectarian societies for said distribution. . . ." The trustees awarded a portion of the income to the Whosoever Gospel Mission and Rescue Home Association (hereinafter referred to as the Mission). The Germantown Relief Society objected to any portion of the income being paid to the mission, contending that it was a religious as

well as a sectarian society. The auditing judge overruled the objection and sustained the award to the mission, to which action exceptions were taken by the Germantown Relief Society.

Counsel for the mission maintained that the Germantown Relief Society had no standing to file exceptions to the adjudication since it is not named as a beneficiary under the will. We cannot agree with this contention. Our courts have consistently permitted possible beneficiaries under similar circumstances to take exceptions in order that the cases could be decided on their merits: see Grandom's Estate, 6 W. & S. 537 (1844) ; Jacoby's Estate, 34 Pa. Superior Ct. 355 (1907) ; Curran's Estate, 310 Pa. 434 (1933).

The record in the case discloses that the mission was chartered by Court of Common Pleas No. 4 of Philadelphia County in 1894:

"For the purpose of disseminating the Christian Religion and conducting practical and useful religious temperance and charitable work. . . ."

The petition for incorporation lists as one of its objects:

"The spread of the Gospel, and encouragement of temperance, and aiding to better the conditions of the poor and fallen humanity by providing employment, meals, lodging, clothing, useful help and assistance where necessary, the holding of religious services and the use of such other means as it may from time to time adopt."

In our opinion we need but refer to the stated purpose and object of the corporation to disqualify it from receiving any of the income from this estate. The corporation cannot be heard to state that it is operating in a manner different from that authorized by its charter. Its charter constitutes a contract with the State, and it must at all times comply therewith. This charter was granted to it for the expressed purpose of "disseminating the Christian Religion." This clearly characterizes it as a religious organization.

Learned counsel for the mission contends that it is not "a religious or sectarian society" because it is engaged in charitable work among poor and fallen men without regard to their creed or religion. There is no force in this argument. One of the basic principles of the Christian faith is giving charity to all who are in need of it, without regard to the recipient's race, color, or creed. Many churches and other purely religious societies engage in nonsectarian benevolent work. This, however, does not in any way alter the fact that they are religious organizations. On the contrary, it is a practical manifestation of true Christian beliefs and doctrines.

The situation in the present case is analogous to that which existed in Collins v. Kephart et al., 271 Pa. 428 (1921), in which the Supreme Court had before it for construction article III, sec. 18, of the Constitution of Pennsylvania, which prohibits appropriations for charitable, educational, or benevolent purposes "to any denominational or sectarian institution". In that case appeals were taken by four hospitals and a university to the finding of the lower court holding that they were not eligible to receive State aid. Mr. Chief Justice von Moschzisker, in affirming the decision of the lower court, said at page 433:

". . . we have reached the deliberate conclusion that, when a charitable, benevolent or educational establishment is 'denominational or sectarian' according to the meaning of this term as understood by the average man, even though the institution in question may bestow its benefits on others and permit those outside the ranks of the sect or denomination involved to take part in its management, it is none the less a sectarian or denominational institution, within the inhibition of the Constitution against state aid."

In arriving at its conclusions the Supreme Court relied largely upon an analysis of the charters of each of the five institutions involved in the appeal. After dis-

cussing the charter of one of these institutions, Justice von Moschzisker said, further, at page 436:

"In the face of these charter provisions, it is idle to contend that defendant corporation is not a denominational or sectarian institution . . .".

Similarly, in the present case, it is futile to contend that the mission is not a religious institution in the face of the clear statement of the purpose for which it was formed contained in its charter. Furthermore, the mission, by its very name, holds itself out to the public as a religious organization. Webster's New International Dictionary defines the word "Gospel" as "The story or record of Christ's life and doctrines, contained in the first four books of the New Testament", and further, "the teachings of Christ and the apostles . . . the Christian faith, revelation, or dispensation." Webster Collegiate Dictionary defines the word "Mission" as "An organization for doing religious and charitable work among the needy, outcast . . .".

The work of the mission is similar to that which is being conducted by the Salvation Army, and what was said concerning the Salvation Army in Bennett v. City of LaGrange et al., 153 Ga. 428, 433 (1921), applies in full force to the present situation:

"The Salvation Army is a benevolent and religious institution. . . . Its work is primarily directed to the spiritual, moral, and physical reformation of the working classes, to the reclamation of the vicious . . . it preaches the gospel. It disseminates Christian truth. It is a church, a sect, and a religious institution. It is sectarian in that it preaches the gospel of Christ, and undertakes to disseminate Christian truth . . . in preference to . . . the doctrines of the Jewish religion, Mohammedanism, and the various other religions of the world. The fact that it undertakes to disseminate Christian truth . . . does not render it unsectarian."

Plain language in a will should be given its everyday meaning. If the language employed by testator in dis-

persing his estate is plain and clearly discloses his intention, the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation: Boyer et al. v. Campbell et al., 312 Pa. 460 (1933), and the other cases cited in 2 Hunter's Orphans' Court Commonplace Book, p. 1420. Although it is true that courts may, if justice requires, construe the word "or" to mean "and" or some other word or phrase, this should not be done unless it is absolutely necessary to do so to give effect to the evident meaning of testator. They cannot arbitrarily expunge or alter words without such apparent necessity: Golden's Estate, 320 Pa. 4 (1935); Simpson's Estate, 304 Pa. 396 (1931); Whitman's Estate, 329 Pa. 377 (1938).

In our opinion, the construction in the adjudication is erroneous and contrary to the intent of testator. This is especially evident because the words "religious" and "sectarian" are not synonymous. To accept the conclusion that the will should be construed as if it read "religious, that is to say, sectarian," implies that testator was unfamiliar with the meaning of the plain language he used. Such a construction does violence to the will.

As we read the will, it seems obvious that the testator desired the income from the trust to be distributed through organizations which were not directly or indirectly religious in character and in no way connected or associated with sectarian teachings. The Germantown Relief Society, the Visiting Nurse Society, and similar charities clearly come within the scope of his meaning. All distributions of income must therefore be restricted to such nonsectarian organizations which are not engaged in any form of religious work.

It is suggested that in view of the fact that the amount to be distributed to each of the societies was left to the discretion of the executors the award to the mission was within their discretion. We cannot agree with this. The executors' powers are clearly defined and limited by the will. It is true that it is for them to decide the pro-

portions which the recipient societies are to receive, but they are definitely prohibited from distributing any of the income to "any religious or sectarian societies." In our opinion, they clearly exceeded their authority in paying a portion of the income to the mission.

Our conclusion is reluctantly reached because of our high regard for the work of the Whosoever Gospel Mission and Rescue Home. However, regardless of our personal feelings, it is our duty to carry out the intentions of testator. We cannot permit our natural sympathies to interfere with our responsibility to see that his money is distributed in accordance with his expressed wishes and intent. The exceptions are therefore sustained.

SINKLER, J., dissenting (Ladner, J., concurring), June 24, 1940.—With the conclusion of the majority of the court on the first exception, namely, that the Germantown Relief Society has standing to take exceptions to the adjudication, we are in accord. The question merits a more extended discussion. In opposition to the conclusion that the society has such standing may be cited the general rule that an action for the enforcement of a charitable trust must be brought by the Attorney General, and cannot be maintained by those who have no special interest therein: A. L. I. Restatement of Trusts, §391, comments (c) and (d); 2 Bogert, Trusts and Trustees (1935), sec. 414; 3 Scott on Trusts (1939), sec. 391.

This rule is based upon the historical fact that in England like actions were usually brought by the Attorney General for the reason that trustees would be unduly harassed if subject to an action by any having possible beneficial interest. Per contra, any member of the class may maintain a suit for the enforcement of a charitable trust created for the benefit of a small class of persons. In many cases, prior to the Statute of Charitable Uses of 1601, 2 Eng. Stat. at L. 708, the suit was brought by the Attorney General; in many others by third persons. These cases indicate a tendency of the courts to relax the

rule requiring the interested parties to be represented by the Attorney General.

The record indicates that the class in the present case is small. Manifestly, the restricted area within which the beneficiaries must be situate, and the limited scope of their corporate activities, confine the beneficiaries to a small number.

The statutes of Pennsylvania disclose a legislative policy which sustains the right of the Germantown Relief Society to file exceptions to the adjudication. The Act of February 17, 1818, 7 Sm. L. 43, sec. 1, 20 PS §2874, provides that any person interested in the due execution of a charitable trust may apply to the Supreme Court of this State, in the event of neglect or abuse by the trustees, for their removal from the trust. The act has been repealed, so far as it relates to testamentary trusts, by the Fiduciaries Act of June 7, 1917, P. L. 447, which confers like authority upon the appropriate orphans' court for the removal of a delinquent fiduciary of a charitable trust upon application of "any person interested." It is not required that the action to remove the trustee be brought by, or with the consent of, the Attorney General: Fiduciaries Act, supra, secs. 54, 53(a)7, 53(b), 20 PS §§921, 927, 930.

In the present case the Germantown Relief Society is a "person interested" within the meaning of the Fiduciaries Act, capable of bringing an action to remove the trustee on the ground of improper distribution of income to an object not within the specified class. No less, the society has standing to except to an adjudication awarding the income to specified institutions.

From the conclusions of the majority upon the other exceptions we dissent. Those exceptions relate to the finding of the auditing judge that the Whosoever Gospel Mission and Rescue Home is within the purpose of testator's will; that the use of the word "or" in the phrase "religious or sectarian" should be construed, "that is to say"; that, while the charter of the mission lays equal

emphasis upon the dissemination of Christian religion and the alleviation of humanity by providing employment, meals, lodging and clothing, the institution is absolutely nonsectarian in character.

The precise question to be determined is whether the executors have abused their discretion in including the Whosoever Gospel Mission and Rescue Home among the objects of testator's benevolence. The will provides that the executors shall use their discretion in the matter of the amount to be distributed to each of the societies. This involves discretion as to whether a society receive anything or nothing. Therefore, the exact issue to be determined is not whether the society is religious or sectarian, but whether the accountants have abused their discretion. The abuse must be manifest.

The auditing judge, in our opinion, was correct in his finding that the distribution of part of the income to the Whosoever Gospel Mission and Rescue Home was within the purposes of testator's will, and that the trustees did not abuse their discretion in making such payment.

We consider that the evidence before the auditing judge justifies the conclusion that no such abuse of discretion exists, and that the testamentary prohibition, "None of said monies shall be paid to any religious or sectarian societies", has not been violated. We think he was right in holding that the predominating purpose of the Whosoever Gospel Mission, as conducted, is the administration of charity in the way of finding employment, meals, lodging, clothing, and assisting the destitute. The fact that services of a religious nature are held at the mission does not vitiate the society according to the intent of testator. From the evidence it does not appear that he was a militant atheist. Whatever may have been his motive in making the provision of his will in question, the holding of religious services would not place the institution beyond the pale of his benevolent intent.

In the briefs in support of the exceptions, and against them, Collins v. Kephart et al., 271 Pa. 428, is cited and

discussed at length. Since there is no reference to this case in the adjudication, it may be assumed that it was not brought to the attention of the auditing judge. In the opinion of Chief Justice von Moschzisker, it is related that the proceeding involved a construction of article III, sec. 18, of the Constitution of this State, which provides that "No appropriations . . . shall be made for charitable, educational or benevolent purposes, to . . any denominational or sectarian institution". In construing this phrase, the opinion of the court holds (p. 434) : "that no public moneys could be appropriated, lawfully, to institutions other than those entirely unconnected with any of the various religious sects or denominations". Five institutions in different parts of the State were under consideration and were held to be within the prohibited class. A basis for the exclusion is that the property and management of the institution were controlled by a corporation, required to be composed of members of a certain church; another, because the membership was confined by its charter to the rector, churchwardens and vestrymen of a certain church; and the Jewish Hospital of this city because the organization which owned and controlled its property was confined to members of the Jewish faith, although the medical and hospital staff were not confined to those of that faith, and the majority of the patients were not of that faith.

The Whosoever Gospel Mission is managed by a board of 15, elected by contributors in the sum of $50 annually, or more. Eligibility to vote for the management, and to serve as a member of the board, is not dependent upon affiliation with any particular sect or denomination; nor, indeed, is a manager or a voter or a contributor required to have any religious convictions whatsoever. The present case is, therefore, widely different in its management and control than were the five which were included in the case cited.

The corporate purposes of the Whosoever Gospel Mission are three, stated conjunctively. The first, the dis-

semination of Christian religion, is wholly religious. The third, conducting charitable work, is wholly secular. The second, "conducting practical and useful religious temperance" is two thirds secular and one third religious. The notes of testimony show that the religious services of the mission are conducted by visiting pastors and by voluntary speakers. Apparently, no payments were made to such persons. Thus, with the possible exception of the expense involved in furnishing facilities for these services, the revenue of the mission is wholly spent for secular purposes.

The meaning of the second corporate purpose, "conducting practical and useful religious temperance", is probably exhortation to total abstinence from liquor, for practical, useful, and religious reasons.

We cannot concur with the opinion of the majority of the court that the case is to be controlled by the principle that a corporation cannot be heard to say that it is exercising any powers other than those conferred upon it by its charter. In the instant case, the Whosoever Gospel Mission is admittedly exercising powers conferred by its charter, and the question is whether its character is to be determined in the light of the powers which it exercises, or in the light of those which it does not. We are disposed to be more liberal in determining the character of a corporation organized for charitable purposes that in the case of one conducted for profit. The nature of the operations of the corporation is, in our opinion, to be given the greatest weight. Furthermore, a distinction exists between the present case and the more usual instance of an absolute award of a principal sum to an institution. Here is involved discretionary distribution of income from time to time. A society, which is presently eligible, may at a future date be otherwise, through change in the manner in which it is conducted, and vice versa.

We, therefore, dissent from the conclusions of the majority of the court, and hold the opinion that the exceptions to the adjudication should be dismissed.